IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**SALON 8736, INC.,**
8736 Belair Road
Baltimore, Maryland 21236,

      *Plaintiff,*

**v.**

**UNITED STATES OF AMERICA**,

      *Defendant.*

Case No.
Filed Electronically

JURY TRIAL DEMANDED

## COMPLAINT FOR REFUND

Salon 8736, Inc. ("Plaintiff"), by and through its undersigned counsels, and pursuant to 26 U.S.C. ("I.R.C.") § 7422, hereby submits this Complaint for Refund against the United States of America ("Defendant"), seeking a refund of an employee retention credit ("ERC" or the "Credit"), interest pursuant to I.R.C. § 6611, and reasonable costs and attorneys' fees pursuant to I.R.C. § 7430 and in support thereof states as follows:

### I.  INTRODUCTION

1.      This is an action for the recovery of employment taxes, including the refundable excess Credit (together with statutory interest and any appropriate attorney's fees) paid for the first quarter of 2021.

2.      In March 2020, in response to the COVID-19 pandemic, Congress provided an employee retention credit for 50 percent of up to $10,000 per employee of qualified wages for the year. At the end of 2020, Congress extended and expanded the Credit. Employers could now claim the Credit for the first and second quarters of 2021; the Credit was also increased to 70 percent of up to $10,000 per employee of qualified wages for each quarter. And Congress later made that same Credit available for the third quarter of 2021.

3.      One of the ways employers are eligible to claim this Credit is by experiencing a significant decline in gross receipts (measured against a 2019 benchmark) during the last three quarters of 2020 or the first three quarters of 2021.

4.      As detailed below, Plaintiff experienced the required significant decline in gross receipts for the quarter in which Plaintiff claimed the ERC at issue here.

5.      Employers are also eligible to claim ERC if, during the last three quarters of 2020 or the first three quarters of 2021, their business was "fully or partially suspended . . . due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." CARES Act § 2301(c)(2)(A)(ii)(I); I.R.C. § 3134(c)(2)(A)(ii)(I).

6.      While Plaintiff does meet the required decline in gross receipts, Plaintiff's business was also partially suspended due to governmental orders that meet the statutory criteria during the first quarter of 2021.

7.      The IRS has failed to pay Plaintiff's appropriately filed ERC claim.

## II.      PARTIES

8.       Plaintiff is a for-profit, corporation, with its principal place of business at 8736 Belair Road, Perry Hall Crossing Shopping Center, Baltimore, Maryland 21236 in Baltimore County, Maryland. Plaintiff is in the business of providing personal care services.

9.      The Defendant is the United States of America.

## III.      JURISDICTION AND VENUE

10.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(1), and under 26 U.S.C. (I.R.C.) § 7422.

11.      Venue in this Court is proper under 28 U.S.C. § 1402(a)(1).

12.     This complaint is timely under I.R.C. §§ 6532 and 7422.

## IV.    LEGAL BACKGROUND

13.     In March 2020, Congress passed the CARES Act, which created the Credit. This Credit is available to eligible employers for qualified wages paid after March 12, 2020, and before, and including, December 31, 2021.

14.     Eligible employers are employers that carry on a trade or business or tax-exempt organizations that meet certain criteria. CARES Act § 2301(c)(2)(A)(i) & (C); I.R.C. § 3134(c)(2)(A)(i) & (C).

### A. Refundability of the Credit

15.     The amount of ERC is not limited to the amount of employment taxes the employers paid, and against which the Credit is applied. Rather, if the amount of the Credit exceeds the applicable employment taxes for the calendar quarter, "such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." CARES Act § 2301(b)(3); I.R.C. § 3134(b)(3).

### B. Significant Decline in Gross Receipts

16.     One way an employer can be an "eligible employer" and thus be eligible for the ERC is by experiencing a significant decline in gross receipts. The significant-decline-in-gross-receipts test is an objective test. Generally, employers are eligible based on a comparison of the gross receipts of the employer in the quarter in which the Credit is claimed to the same quarter in 2019. Certain continuation and lookback rules also can apply, as detailed below.

17.     For quarters in 2021, employers are eligible for the ERC under the decline-in-gross-receipts test if their gross receipts for the quarter decreased by more than 20 percent compared to the corresponding quarter in 2019. CARES Act § 2301(c)(2)(A)(ii)(II); I.R.C. §

3134(c)(2)(A)(ii)(II). For example, if an employer had $100,000 in gross receipts in the first quarter of 2019 and less than $80,000 in gross receipts in the first quarter of 2021, the employer qualifies for the ERC for the second quarter of 2021.

18.    For 2021, there is also an election rule that allows employers to be eligible for the ERC in any quarter based on a greater than 20 percent reduction of gross receipts in the immediately preceding quarter. CARES Act § 2301(c)(2)(B); I.R.C. § 3134(c)(2)(B). For example, suppose an employer has gross receipts of 79 percent of the corresponding quarter in quarter 4 of 2020, 88 percent of the corresponding quarter in quarter 1 of 2021, 78 percent of the corresponding quarter in quarter 2 of 2021, and 138 percent of the corresponding quarter in quarter 3 of 2021. This employer qualifies for the ERC in all three 2021 quarters:

- The employer is eligible in quarter 1 of 2021 under the alternative quarter election rule based on the more-than-20-percent reduction in gross receipts in quarter 4 of 2020;

- the employer is eligible in quarter 2 of 2021 without the election based on a more than 20 percent decline in gross receipts; and

- the employer is eligible in quarter 3 of 2021 under the alternative election rule based on the more-than-20-percent reduction in gross receipts in quarter 2 of 2021.

I.R.C. § 3134(c)(2)(A) & (B); Notice 2021-49, 2021-34 I.R.B. 316.

### C. Full or Partial Suspension of Operations

19.    A second way an employer can be an "eligible employer" and thus be eligible for the ERC is by having its operations "fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." I.R.C. § 3134(c)(2)(A)(ii)(I); see also CARES Act § 2301(c)(2)(A)(ii)(I).

4

20.    According to IRS guidance, a business is partially suspended "if, under the facts and circumstances, more than a nominal portion of its business operations are suspended by a governmental order." Notice 2021-20, 2021-11 I.R.B. 922. The same notice provides, as a safe harbor, that

> a portion of an employer's business operations will be deemed to constitute more than a nominal portion of its business operations if either (i) the gross receipts from that portion of the business operations is not less than 10 percent of the total gross receipts (both determined using the gross receipts of the same calendar quarter in 2019), or (ii) the hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business (both determined using the number of hours of service performed by employees in the same calendar quarter in 2019).

*Id.*

### D. Qualified Wages

21.    To receive the ERC, an eligible employer must also pay "qualified wages." See CARES Act § 2301(c)(3); I.R.C. § 3134(c)(3).

22.    Qualified wages are wages and compensation an eligible employer pays to some or all employees during the relevant period, including qualified health plan expenses that are properly allocable to an employee. CARES Act § 2301(c)(3)(C) & (5); I.R.C. § 3134(c)(3)(A) & (4).

23.    For purposes of determining the average number of full-time employees, a full-time employee is an employee who, with respect to any month in 2019, had an average of at least 30 hours of service per week or 130 hours of service in the month. CARES Act § 2301(c)(3)(A)(i) (incorporating I.R.C. § 4980H), as amended by § 207(a)(2) of the Taxpayer Certainty and Disaster Tax Relief Act of 2020 ("Relief Act"); IRS Notice 2021-49, 2021-34 I.R.B. 316. Under IRS guidance, the average number of full-time employees is determined by taking the sum of the number of full-time employees in each calendar month during which the employer operated in

2019 and dividing that number by the number of months during which the employer operated in 2019. IRS Notice 2021-20, 2021-11 I.R.B. 922, Answer 31.

24.    For quarter 1 of 2021, whether "some or all" wages are qualified wages depends on the size of the employer. For eligible employers that averaged 500 or fewer full-time employees in 2019, qualified wages include all wages paid to any employee during a calendar quarter in which there is a significant decline in gross receipts, or the employer experienced a full or partial suspension of its operations. CARES Act § 2301(c)(3)(A)(ii), as amended by § 207(e)(1) of the Relief Act.

### E.  Amount of Credit

25.    For 2021, the ERC is equivalent to 70 percent of the qualified wages that an eligible employer pays in any quarter. I.R.C. § 3134(a). And the maximum per-employee qualified wages that can be taken into account in determining the Credit for 2021 is $10,000 per quarter. I.R.C. § 3134(b)(1). Thus, an eligible employer that paid all of its employees at least $10,000 in qualified wages for each of the first three quarters of 2021 would be entitled to a $7,000 Credit for the qualified wages it paid each of its employees in each of those quarters. For example, an eligible employer that paid qualified wages of at least $10,000 to 95 employees in each of the first three quarters of 2021 is entitled to an ERC for 2021 of $1,995,000.

26.    In this case, Plaintiff is an eligible employer who paid qualified wages and suffered a significant decline in gross receipts such that Plaintiff was entitled to an ERC. Yet to date, the Defendant has failed to pay the ERC to which Plaintiff is entitled.

27.    Plaintiff brings this suit to recover the ERCs wrongfully withheld by the Defendant.

## V.    FACTUAL BACKGROUND

28.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

29.    In 2019, Plaintiff employed on average 100 or fewer full-time employees.

30.    In 2021, Plaintiff paid qualified wages to its employees.

31.    On March 5, 2020, Maryland Governor Larry Hogan issued a statewide Executive Order declaring a State of Emergency and Existence of Catastrophic Health Emergency due to COVID-19. This declaration cited the threat to Maryland of COVID-19 as a catastrophic health emergency requiring the State to deploy resources and implement the emergency powers of the Governor to protect the health and safety of Marylanders.

32.    On March 12, 2020, Maryland Governor Larry Hogan exercised these emergency powers by issuing a statewide Executive Order Prohibiting Large Gatherings and Events and Closing Senior Centers.

33.    On March 16, 2020, Governor Hogan issued statewide Executive Order Amending and Restating the Order of March 12, 2020, Prohibiting Large Gatherings and Events and Closing Senior Centers, and Additionally Closing Bars, Restaurants, Fitness Centers, and Theaters.

34.    On March 17, 2020, Governor Hogan renewed the State of Emergency and Existence of Catastrophic Health Emergency due to COVID-19.

35.    On March 19, 2020, Governor Hogan issued Executive Order 20-03-19-01, Amending and Restating the Order of March 16, 2020, Prohibiting Large Gatherings and Events and Closing Senior Centers, and Additionally Closing Various Other Establishments.

36.    On March 23, 2020, Governor Hogan issued Executive Order 20-03-23-01 Amending and Restating the Order of March 19, 2020, Prohibiting Large Gatherings and Events and Closing Senior Centers, and Additionally Closing All Non-Essential Businesses and Other Establishments.

37.    Section III of Executive Order 20-03-23-01 closed all Non-Essential Businesses to the public, effective at 5:00 p.m. on March 23, 2020. The order incorporates as reference all businesses not part of the critical infrastructure sectors identified by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency as "Non-Essential Businesses".

38.    Moreover, Section IV, subsection g., declared control over the occupancy and use of certain establishments in Maryland including tattoo parlors; tanning salons; barber shops, and beauty salons and all other establishments that provide esthetic services, provide hair services, or provide nail services. The executive order closed these establishments to the public, effective as of 5:00 p.m. on March 23, 2020.

39.    Plaintiff operates as a beauty salon in the state of Maryland.

40.    Plaintiff offers various esthetic services including but not limited to, providing hair services.

41.    Effective March 23, 2020, at 5:00 p.m., Plaintiff fully suspended their operations in accordance with Executive Order 20-03-23-01.

42.    Beginning May 15, 2020, the State of Maryland limited personal care services and beauty solans to 50 percent occupancy with Executive Order 20-05-13-01.

43.    The State of Maryland continuously enforced orders covering beauty salons through 5:00 PM on March 12, 2021.

44.    In addition to their suspension of operations, Plaintiff's gross receipts for the employment tax quarter ending March 31, 2021, was less than 80 percent of the gross receipts for the same employment tax quarter for 2019.

45.    In the first quarter of 2019, Plaintiff made $372,608.22 in gross receipts.

46.    In the first quarter of 2021, Plaintiff made $277,905.97 in gross receipts.

47.    Plaintiff, therefore, experienced a 25.42 percent decrease in gross receipts comparing the first quarter of 2019 to the first quarter of 2021.

48.    Furthermore, in the fourth quarter of 2019, Plaintiff made $482,481.42 in gross receipts.

49.    In quarter four of 2020, Plaintiff made $314,530.54 in gross receipts.

50.    Therefore, Plaintiff experienced a 34.81 percent revenue decline in quarter four of 2020 and may therefore claim eligibility for the Credit in quarter one of 2021 on the basis of an alternative quarter election.

51.    Accordingly, on or about June 19, 2024, Plaintiff filed an E.R.C. claim of one hundred twelve thousand one hundred fifty-four and 30/100 dollars ($112,154.30) as it relates to the employment tax quarter ending March 31, 2021.

52.    Plaintiff maintained adequate and accurate documentation to support the determination of gross receipts for the employment quarter provided above.

53.    Plaintiff is therefore an eligible employer under all applicable statutory provisions.

54.    As of the date of the filing of this Complaint, Plaintiff has not received payment of the claimed refund.

55.    Pursuant to the foregoing, the Service has not processed Plaintiff's ERC refund claim.

## VI.    COUNT ONE – CLAIM FOR REFUND

56.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

57.    Plaintiff is entitled to its E.R.C. refund for the employment period ending March 31, 2021, that was filed on or about June 19, 2024, and remains unpaid by the Service.

58.    Section 2301 of the CARES Act allows a Credit against applicable employment taxes for eligible employers, including tax-exempt organizations, that pay qualified wages, including certain health plan expenses, to some or all employees after March 12, 2020, and before January 1, 2021.  Section 207 of the Relief Act amends section 2301 of the CARES Act to extend the application of the employee retention credit to qualified wages paid after December 31, 2020, and before July 1, 2021, and to modify the calculation of the Credit amount for qualified wages paid during that time.

59.    Plaintiff paid all amounts due for the employment tax quarter ending March 31, 2021. In total, Plaintiff paid fifty-four thousand two hundred and 06/100 dollars ($54,200.06) in employment tax to the I.R.S. for the employment tax quarter ending March 31, 2021.

60.    Plaintiff filed its claim for refund within three years of filing the return as specified in I.R.C. § 6511.

61.    Plaintiff's suit under I.R.C. § 7422(a) is filed in accordance with I.R.C. § 6532(a)(1); i.e., more than six months have elapsed since the filing of Plaintiff's Form 941-X claim for refund with the I.R.S.

62.    Accordingly, Plaintiff is due a refund of its ERC for federal employment tax for the quarter ending March 31, 2021.

## VII.    COUNT TWO – CLAIM FOR INTEREST

63.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

64.    As of the date of this filing, Plaintiff has not received any correspondence from the Service regarding the processing and or payment of its ERC claims for the employment tax period ending March 31, 2021.

65.      Pursuant to I.R.C. § 6611, interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under I.R.C. § 6621. Moreover, pursuant to I.R.C. § 6611(b), such interest shall be allowed and paid, in the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such a check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.

66.      As of the date of this filing, Plaintiff has neither received its ERC claims for the employment tax period ending March 31, 2021, nor has it received any correspondence regarding why said payment has not been effectuated.

67.      Accordingly, Plaintiff is statutorily due interest for its ERC claim for the employment tax period ending March 31, 2021, until the date payment is made.

## VIII.   COUNT THREE – CLAIM FOR ATTORNEYS' FEES

68.      Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

69.      Pursuant to I.R.C. § 7430, in any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and reasonable litigation costs incurred in connection with such court proceeding.

70.     Accordingly, Plaintiff requests an award of costs and attorneys' fees as incurred as a result of the administrative and litigation-based representation as required to facilitate a resolution to this claim for refund.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Enter judgment for Plaintiff in the amount of one hundred twelve thousand one hundred fifty-four and 30/100 dollars ($112,154.30)

(B) Enter judgment for Plaintiff for interest that is unpaid by the United States.

(C) Enter judgment for Plaintiff for reasonable attorneys' fees including but not limited to litigation and administrative costs.

(D) Such other relief to which Plaintiff is entitled to at law or in equity.

(E) Plaintiff requests a jury trial for all issues triable by a jury pursuant to Federal Rule of Civil Procedure 38(b).

Dated: January 22, 2025                              Respectfully Submitted,


                                        __/s/ Glen E. Frost_____
                                        GLEN E. FROST, Esq.
                                        Bar No. 29014
                                        Frost & Associates, LLC
                                        839 Bestgate Road, Suite 400
                                        Annapolis, MD 21401
                                        Phone: (410) 497-5947
                                        Facsimile: (888) 235-8405
                                        Email: glen.frost@frosttaxlaw.com

_/s/ J. Peter Haukebo_____
J. PETER HAUKEBO, Esq.
(signed by Glen E. Frost with permission of
J. Peter Haukebo)
Bar No. 18307
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: peter.haukebo@frosttaxlaw.com


_/s/ Robert M. Braland_____
ROBERT M. BRALAND, Esq.
(signed by Glen E. Frost with permission of
Robert M. Braland)
Bar No. 30440
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: robert.braland@frosttaxlaw.com


_/s/ Zachary J.T. Lyda_____
ZACHARY J.T. LYDA, Esq.
(signed by Glen E. Frost with permission of
Zachary J.T. Lyda)
Bar No. 31399
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
Phone: (410) 497-5947
Facsimile: (888) 235-8405
Email: zachary.lyda@frosttaxlaw.com


*Counsels for Plaintiff*
*Salon 8736, Inc.*